**In The ESTATE OF Beulah A. SULLIVAN, Deceased, Gay Ann Weadon, Personal Representative, Appellant,**

v.

**Neil SULLIVAN, Respondent.**

**No. ED 96674.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

May 22, 2012.

Clinton B. Roberts, Farmington, MO, David Mayhugh, Park Hills, MO, for Appellant.

William B. Beedie, Farmington, MO, for Respondent.

ROBERT M. CLAYTON III, Judge.

Gay Ann Weadon, personal representative of the estate of Beulah A. Sullivan ("Weadon"), appeals the judgment of the probate division of the circuit court granting Neil Sullivan's application for partial distribution and petition to discover assets and denying Weadon's motion for contempt. We affirm the judgment of the probate division as modified.

## I. BACKGROUND

Beulah A. Sullivan ("Decedent") died in March 2007. Prior to her death, in 2005, Decedent's three children, Weadon, Clyde L. Sullivan, and Neil Sullivan ("Sullivan"), entered into an agreement concerning certain property and money given to Sullivan by Decedent. Pursuant to the agreement, Sullivan agreed to pay Decedent for cattle conveyed to him by Decedent as well as to repay money borrowed from Decedent. As a result of this agreement, Sullivan executed two promissory notes in favor of Decedent.[1] The stipulation and agreement was entered into among Decedent's heirs in anticipation of a judgment subsequently entered declaring Decedent to be incapacitated.[2] In its declaration of incapacity, the probate division acknowledged the parties' agreement and incorporated it into its judgment.

Following Decedent's death, letters of administration of her estate were issued, and Decedent's daughter, Weadon, was appointed personal representative of the estate. An inventory and appraisement was filed. At the time of Decedent's death, Sullivan resided on her farm. Weadon subsequently obtained an order authorizing the sale of the farm and an order requiring Sullivan to vacate the property and remove all his personal property from the real estate by November 14, 2008. Thereafter, Weadon filed a motion asking the probate division to find Sullivan in contempt for failing to remove two of his mobile homes from the property and for failing to file a list of Decedent's personal

---

1. Robert W. Sullivan also signed one promissory note, and Sullivan's wife, Cathura, signed the second note, however, neither is a party to the present appeal.

2. The parties further noted in the agreement that Decedent had not made any estate plan, and upon her death, her estate would be governed by the law of intestate succession.

property in his possession. In addition, Sullivan filed a petition for discovery of assets, seeking to have the probate division declare him the owner of certain personal property and seeking to have the court declare that certain property belonged to the estate.

While these motions were pending before the probate division, Weadon filed two separate actions in St. Francois County Circuit Court on behalf of the estate against Sullivan to collect on the promissory notes he had executed in favor of Decedent. Sullivan subsequently filed an application for partial distribution with the probate division, seeking to have the notes distributed to him and the value of the notes subtracted from his distributed share upon final settlement of Decedent's estate.

The probate division entered judgment, in relevant part, granting Sullivan's application for partial distribution and ordering Weadon to transfer the notes to Sullivan. The probate division further ordered the $42,000.00 outstanding balance on the notes be charged against his distributed share upon final settlement of Decedent's estate. The probate division also granted Sullivan's petition for discovery of assets, declaring him to be the owner of certain personal property. Finally, the probate division denied Weadon's motion for contempt. Weadon now appeals the probate division's judgment.[3]

## II. DISCUSSION

### A. Standard of Review

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc

1976). *Cordes v. Williams*, 201 S.W.3d 122, 128 (Mo.App. W.D.2006). Thus, we will affirm the probate division's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### B. Partial Distribution

In her first point on appeal, Weadon claims the probate division erred in granting Sullivan's application for partial distribution because the distribution of the balance of the two promissory notes to Sullivan was against the weight of the evidence. Weadon also argues that the probate division lacked jurisdiction to interfere with the actions pending in circuit court to collect on the notes. Weadon's claims are without merit.

### 1. Concurrent Jurisdiction

As a threshold matter, we address the issue of concurrent jurisdiction between the action pending in the probate division and the two actions filed by Weadon in circuit court. According to Weadon, the probate division did not have jurisdiction to grant the partial distribution because of the two actions to collect on the notes pending in circuit court. In support of her argument, Weadon cites *Stark v. Moffit*, 352 S.W.2d 165 (Mo.App.1961). In *Stark*, the court set forth the general rule that "when a court of competent jurisdiction becomes possessed of a cause, its authority continues, subject only to the authority of a superior court, until the matter is finally

---

3. Section 472.160.1(4) RSMo (2000) provides that a party may appeal an order making a distribution, and (14) allows for appeal in "all other cases where there is a final order or judgment of the probate division ... under this code...." This statutory right to appeal must be liberally construed to favor the right

to appeal. *In re Estate of Clark*, 83 S.W.3d 699, 701–02 (Mo.App. W.D.2002). Where a judgment of the probate court disposes of all claims and issues in the proceedings before it, the judgment is appealable pursuant to Section 472.160. *Id.* at 702.

and completely disposed of; and no court of concurrent jurisdiction may interfere with its action." *Id.* at 167. (internal citations omitted). However, Weadon's argument misconstrues the "jurisdiction" of the probate division to enter its judgment.

The issue of concurrent jurisdiction was considered in *In re J.L.B.*, 280 S.W.3d 147 (Mo.App. S.D.2009), in light of the Missouri Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). The court in *J.L.B.* noted that there are many types of cases in which more than one court properly has subject matter jurisdiction over the same matter or issue. *Id.* at 153. However, since the Supreme Court's decision in *Webb*, the subject matter jurisdiction of the separate courts is no longer the proper consideration where there are cases involving the same matter or issue in multiple courts. *Id.* Instead, based upon the holding in *Webb*, jurisdiction is conferred by Article V, section 14 of the Missouri constitution, and the circuit courts have jurisdiction over "all cases and matters, civil and criminal." *Webb*, 275 S.W.3d at 253. (quoting Missouri Constitution Article V, Section 14). Therefore, the proper question is whether it was "legally erroneous" for a conflicting judgment to be entered while another action was pending. *J.L.B.*, 280 S.W.3d at 153 (internal citations omitted).

■ In the present case, although the judgment of the probate division did ultimately affect the cases pending in circuit court, it was not "legally erroneous." Under Section 473.613.1, the probate division had the authority to order the notes to be distributed to Sullivan from Decedent's estate and to order the value of the outstanding balances to be subtracted from Sullivan's share of the estate upon final settlement. Moreover, in this case, the circuit court could not have granted Sullivan the relief he sought in the probate division. Thus, we cannot find that the probate division's judgment violated the prohibition against interfering with the actions filed in circuit court.

## 2. Prejudice

■ We next address Weadon's substantive argument concerning the probate division's grant of partial distribution. Weadon claims the judgment was against the weight of the evidence and constituted an abuse of discretion because making the distribution of the notes, which totaled $42,000.00, to Sullivan while the two remaining heirs had to wait for the sale of Decedent's farm to receive their share of the estate was improper. We disagree.

Pursuant to Section 473.613.1 RSMo (2000),[4] upon application of any distributee after six months from the date letters are issued, the probate division "may decree partial distribution if the court believes that other distributees and claimants are not prejudiced thereby." In its judgment granting partial distribution, the probate division noted the "size of the Estate is such that the Estate would not be prejudiced by the distribution of said notes." Further, the probate division found the individual heirs would not be harmed by the partial distribution of the notes to Sullivan. This finding was not against the weight of the evidence.

Although there was evidence that at the time the estate had liquid assets of approximately $23,000.00 from a bank account and a CD, the annual settlement filed by Weadon in July 2010, reflected the estimated value of Decedent's real estate at $685,000.00. While Weadon is correct that at the time of the partial distribution the estate did not have sufficient liquid assets to distribute $42,000.00 to each of the re-

4. All further statutory references are to RSMo (2000).

maining heirs, and the heirs would have to wait an unspecified time until the farm sold to recover their share of the estate, we do not believe this amounts to such prejudice as to demonstrate an abuse of discretion. The probate division properly reasoned that the size of the estate was sufficient enough to preclude prejudice or harm from the non-cash partial distribution of the notes to Sullivan. This was supported by the evidence concerning the value of Decedent's farm, estimated on the annual settlement filed prior to the hearing at $685,000.00, which was an asset of the estate. Although the timing of the sale was uncertain, based upon the liquid assets in the estate at the time of the hearing, Decedent's heirs would have nonetheless had to wait for the sale of the farm to receive the majority of their share of the estate. The probate division's consideration of the value of the assets in the estate, including the estimated value of the farm, was reasonable and consistent with the evidence in the record, and its judgment granting partial distribution was not an abuse of discretion nor was it against the weight of the evidence.

### 3. Attorney's Fees

■ Weadon also attempts to argue the failure of the probate division to include attorney's fees incurred in the attempt to collect on the notes in circuit court in its partial distribution was against the weight of the evidence. However, Weadon's claim ignores the fact that she chose to file the actions in circuit court on behalf of the estate in the face of language in the 2005 agreement entered into among the heirs, as well as language in the notes themselves, that contemplated the balance of the notes being satisfied from Sullivan's ultimate share of the estate. Specifically, the 2005 agreement stated any balance remaining due on one of the promissory notes upon Decedent's death shall be "de-ducted from [Sullivan's] share of [Decedent's] estate, if an estate remains." Although no such language is contained in the agreement with respect to the second note, each of the promissory notes state Sullivan may apply his share of Decedent's estate "to pay any unpaid balance upon this note in full."

In addition, the language requiring Sullivan to pay reasonable attorney's fees is contained in the security agreements executed in conjunction with the notes. The security agreements each provide that Sullivan will be obligated to pay the reasonable attorney's fees incurred in enforcing the holder's rights and remedies upon default of the debtor. The issue of Sullivan's potential default and his obligation or lack thereof to pay any fees deemed "reasonable" which were incurred in pursuit of collection on the notes was not before the probate division. Moreover, it is uncertain whether the estate would be entitled to the fees claimed based upon the language in the security agreements.

As a result of the evidence in the record before us, we cannot conclude the probate division's decision not to include attorney's fees in its distribution of the balance of the notes to Sullivan was against the weight of the evidence.

For the foregoing reasons, we conclude the probate division did not err in entering its judgment granting Sullivan's application for partial distribution. Point one on appeal is denied.

### C. Contempt

In her second point on appeal, Weadon claims the probate division erred in denying her motion for contempt. Weadon argues the probate division's findings on her claims for contempt were against the weight of the evidence.

Weadon filed a two-count motion for contempt, seeking a judgment of contempt against Sullivan for his failure to file an itemized list of Decedent's personal property in his possession pursuant to the probate division's previous order. Weadon claimed Sullivan "has failed and refused to file said written list" with the probate division, to the detriment of the estate. Weadon also sought a contempt judgment for Sullivan's failure to vacate Decedent's farm and remove all of his property from the premises. According to Weadon, Sullivan failed to comply with the probate division's order that he do so, and Sullivan's property still remained on the farm. The probate division denied Weadon's motion on both counts.

Civil contempt is intended to benefit the party for whom an order was entered. *Stuart v. Ford,* 292 S.W.3d 508, 513 (Mo.App. S.D.2009) (internal citations omitted). The purpose of a finding of contempt is to compel compliance with the relief granted. *Id.* We will not disturb the court's ruling in a civil contempt case absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when the court's ruling is clearly against the logic of the circumstances and is so arbitrary and capricious as to shock the sense of justice and indicate the court lacked careful consideration of the issue. *Id.* The court's discretionary ruling is presumed to be correct, and the party challenging the ruling must show the court abused its discretion. *Id.* at 513–14. Where reasonable persons can differ as to the propriety of the ruling, we will not find an abuse of discretion. *Id.* at 513.

### 1. Personal Property List

With respect to Sullivan's failure to file an itemized list of Decedent's personal property in his possession, the probate division improperly found Sullivan failed to file such a list pursuant to the probate division's September 22, 2008 order. The only order in the record before us dated September 22, 2008, is the court's order granting authority to take charge of real estate. Nothing in this order requires Sullivan to file an itemized list of Decedent's personal property in his possession. However, to the extent such an order exists but is not part of our record on appeal, we note that the record further reflects Sullivan filed a list of personal property of Decedent in his possession in January 2009,[5] noting he possessed "none." Thus, although the probate division reached its decision to deny Weadon's motion for contempt for erroneous reasons, it reached the correct result because Sullivan did file a list of Decedent's personal property in his possession. Therefore, we will affirm the probate division's ruling on Weadon's motion for contempt. *See Lancaster v. Simmons,* 621 S.W.2d 935, 942 (Mo.App. W.D.1981) (where the court reaches a correct result with erroneous reasoning, the decision must be affirmed).

### 2. Failure to Vacate the Farm

The second count in Weadon's motion for contempt concerned Sullivan's delay and failure to vacate Decedent's farm. According to the motion, Sullivan was ordered to "surrender, vacate and leave the real estate, and remove all property belonging to Neil Sullivan and his family, including two (2) mobile homes," by November 14, 2008. As of the November 2010 hearing, evidence was adduced that one of the mobile homes still remained on Decedent's property. However, the probate division denied Weadon's motion for contempt in this respect, finding the estate

---

5. Although the file stamped pleading shows the document was filed in January 2008, both the docket entry for the filing and the certification shows the date as January 2009.

was not harmed by Sullivan's delay in vacating the farm. This finding was not against the weight of the evidence.

Although there was testimony concerning the condition of the farm after Sullivan vacated the premises, Glen Hagan, the listing agent for the real estate, further testified the farm was in a more saleable condition at the time of the hearing than it was when Sullivan left. Hagan testified that prospective buyers do ask about the presence of the remaining mobile home and expect it would be sold with the property. However, Hagan testified although the presence of the mobile home probably did not help deals with prospective purchasers, it did not likely "kill the deal." Hagan also acknowledged it was possible to negotiate the sale of the mobile home with the property even though it was not included on the listing.

The only evidence presented concerning the effect of the presence of Sullivan's mobile home upon the sale of the farm and ultimately upon the estate was Hagan's testimony that it "probably" did not help with "the deal." No additional evidence was presented concerning the potential harm to the estate in this regard. Thus, the probate division's conclusion that Sullivan's delay in vacating the premises entirely did not result in harm to the estate was not against the weight of the evidence. As a result, the probate division did not abuse its discretion in denying Weadon's motion for contempt with respect to Sullivan's failure to completely vacate the farm. Point two on appeal is denied.

## D. Discovery of Assets

In her third and final point on appeal, Weadon claims the probate division erred in finding, upon Sullivan's petition for discovery of assets, that Sullivan was the owner of the "rifle, scope and mounts, storage tubs, saddle and saddle pad, and

tractor keys." According to Weadon, such a finding was against the weight of the evidence because Sullivan's own testimony was that he was not claiming certain items.

Sullivan filed a petition for discovery of assets, claiming he was the sole owner of certain personal property. Sullivan attached Exhibit A to his petition, which contained a list of the items Sullivan claimed belonged to him and not to the estate. Included in this list were the "Rifle scope with see-thru mounts (on Dad's 30–06 rifle)," "Saddle pad," and "Tractor keys." Sullivan also attached Exhibit B to the petition, which purported to list certain property of Decedent that should be inventoried. Included in Exhibit B was a "30–06 rifle." Sullivan testified he was not claiming ownership of the items on Exhibit B, but instead was requesting the items be found to belong to the estate.

At the hearing, Sullivan testified specifically that he purchased a saddle pad for his saddle. Sullivan testified Weadon had taken the saddle and saddle pad, but had only returned the saddle. Sullivan further testified he was only requesting the scope and mounts for the rifle, and not the rifle itself. Additionally, Sullivan admitted he was not entitled to ownership of the tractor keys because they belonged to his son.

Based upon the evidence discussed above, the probate division erroneously granted Sullivan ownership of the rifle, saddle, and tractor keys. Sullivan's petition for discovery of assets did not seek to have ownership of the saddle declared, and his own testimony was that the saddle was returned to him. Sullivan also stated he was not asking for ownership of the rifle. Further, Sullivan testified he was not the owner of the tractor keys.

"A judgment that is inconsistent or contradictory on a material matter, or that is based on conclusions at variance

with the facts, cannot stand." *In re N.H.,* 155 S.W.3d 820, 824 (Mo.App. E.D.2005). Although we may reverse such a judgment and remand it to the probate division for further proceedings, we are authorized by Rule 84.14 [6] to render "such judgment as the court ought to give."

Accordingly, we modify the probate division's judgment only to delete the portion awarding Sullivan the "rifle," "saddle," and "tractor keys." The judgment, as modified, is affirmed in all other respects.

### III. CONCLUSION

The judgment of the probate division is affirmed as modified.

GARY M. GAERTNER, JR., P.J., and SHERRI B. SULLIVAN, J., concur.

---

6. References to Rules are to Missouri Supreme Court Rules (2012).