

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE ESTATE OF WILLIAM B. )
VAN NOTE, Deceased )
                                )
THE BAR PLAN SURETY AND )
FIDELITY COMPANY, )
                                )      **WD77102**
              **Respondent,** )
                                )      **OPINION FILED:**
v. )      **September 23, 2014**
                                )
                                )
SUSAN E. VAN NOTE, )
                                )
                   **Appellant.** )

### Appeal from the Circuit Court of Clay County, Missouri
### The Honorable Larry D. Harman, Judge

**Before Division I:** Mark D. Pfeiffer, Presiding Judge, and
James Edward Welsh and Karen King Mitchell, Judges

This is an appeal from a civil commitment order entered in connection with a contempt ruling by the Circuit Court of Clay County, Missouri, Probate Division ("probate court"). Susan E. Van Note ("Van Note")[1] was civilly committed to the Clay County Jail until such time as she purged herself of her contempt by returning monetary estate assets in the amount of $272,603.01 to the estate of William B. Van Note, ("the estate") that she improperly removed

---

[1] Though, according to Van Note, her license to practice law in the State of Missouri is currently "inactive," she claims to have maintained a license to practice law at all relevant times related to this proceeding.

from the estate.[2]  Van Note claims that the commitment order was entered in error in several respects.  We affirm.

## Factual and Procedural Background

Van Note's father, William B. Van Note ("Father") died on October 6, 2010.  On February 16, 2011, Van Note was appointed the personal representative of Father's Missouri estate,[3] and The Bar Plan Surety and Fidelity Company ("The Bar Plan") posted a surety bond in the estate on Van Note's behalf.  Van Note, as the personal representative of the estate, made numerous distributions of property to herself including real property, personal property, and cash.  Van Note sold several of the pieces of real property she distributed to herself during the time that she served as the personal representative of the estate.[4]

On September 17, 2012, Van Note's powers as the personal representative of the estate were suspended, as she had been charged with Father's murder.  Van Note was subsequently removed as the personal representative, and David Holdsworth ("Holdsworth") was appointed as the estate's Administrator *de bonis non*.  On November 28, 2012, Holdsworth filed a petition for the return of the estate property that Van Note had distributed to herself.  The following day, The Bar Plan filed a similar petition.  On May 1, 2013, the probate court ordered Van Note to return, by June 3, 2013, the distributions of estate property she had previously withdrawn.

On June 11, 2013, Holdsworth filed a motion for contempt against Van Note on behalf of the estate, as she had not complied with the probate court's May 1 order.  The Bar Plan filed a similar motion on November 20, 2013.  The probate court held two hearings related to Van

---

[2] This is not an action to recover judgment for money due to the estate, but to recover specific property belonging to the estate in Van Note's possession.  Missouri follows the rule that "the trial court's order holding a person in contempt for failing to return a specific fund of money in [her] possession does not violate the constitutional prohibition against imprisonment for debts."  *Rutter v. Bugg (Estate of Downs)*, 300 S.W.3d 242, 248 (Mo. App. W.D. 2009) (citing *Zeitinger v. Mitchell*, 244 S.W.2d 91, 98 (Mo. banc 1951)).

[3] Father also had an estate in Florida, which was probated in Florida.

[4] Van Note acquired access to cash assets well in excess of $1,000,000.

2

Note's alleged contempt, one on July 1, 2013, and the other on December 12, 2013. Between the two hearings, the probate court received evidence from Van Note in which Van Note admitted owing a return of cash assets belonging to the estate in the amount of $272,613.01,[5] but Van Note claimed that the reason she could not return the cash assets belonging to the estate was because she had used the estate's cash assets for her personal need of posting a $1 million cash bond in the criminal case pending against her for the alleged murder of Father. The probate court also received evidence that Van Note's $1 million cash bond was released and replaced with a $250,000 criminal bond requirement *after* the May 1 order. Van Note claimed, however, that Van Note had "filed a lien against [the $1 million bond] to pay for my criminal defense," such that when the cash bond balance of $750,000 was returned to Van Note, she claimed it was "spent."[6] Van Note provided no evidence, such as attorney's fees statements or retainer agreements, corroborating *actual* attorney's fees "expenditures" she claims to have incurred.

The probate court's July 10, 2013 order found Van Note in contempt of court for failing to comply with the court's May 1 order without reasonable or lawful excuse. The probate court found Van Note's failure to comply with the May 1 order "direct, willful and deliberate" because it found that Van Note was "financially able to make all required monetary payments under the Order."

---

[5] The transcript of the portion of the second hearing in which the court orders Van Note's commitment states that the amount Van Note agrees that she owes the estate, and the amount she is therefore ordered to repay to purge her contempt, is $272,613.01. The written commitment order, however, shows this figure to be $272,603.01. The dollar amount referenced in the *written* instrument is controlling. *See* Rule 74.01(a).

[6] Essentially, Van Note asserted in her testimony to the probate court that, while she understood that the estate's cash assets did not belong to her, once she had removed the estate's assets as the personal representative of the estate for her personal needs, the estate's assets became subject to Van Note's personal lien asserting a future claim for attorney's fees for some other lawyer or law firm besides herself . . . even though Van Note recognizes that the cash assets she claims to have placed a lien upon never belonged to her in the first place. To state Van Note's assertion is to recognize its absurdity. Compounding the situation, the reasonable inference from Van Note's testimony was that she believed she was entitled to ignore the probate court's order directing her to return the estate's money in her possession because she had placed her "lien" upon the fund of money she had wrongfully removed from the estate and continued to hold for her personal needs. It is not difficult to surmise why the probate court lost patience with Van Note's recalcitrant behavior.

3

At the conclusion of the December 12, 2013 hearing, the probate court made the following factual findings and rulings:

> That Susan E. Van Note has acknowledged in a verified pleading, and, therefore, as a judicial admission, that she owes the estate at least $272,613.01.
>
> The court has previously ordered Susan E. Van Note to deliver all estate assets to the personal representative de bonis non, by orders of May 1, 2013, and June 10, 2013. On July 1, 2013, the court found Susan E. Van Note to be in contempt by docket entry, and by a separate ordered [sic] dated July 10, 2013.
>
> Susan E. Van Note is, therefore, as a sanction for said contumacious conduct in failing to purge herself of contempt, ordered into the custody of the Clay County Sheriff until she partially purges herself of contempt by returning and delivering $272,613.01 to the personal representative de bonis non, by 10 o'clock a.m. on Tuesday, December 17, 2013, or Susan E. Van Note is ordered and directed to report to the Clay County Sheriff's Department for incarceration until the contempt is purged.

Five days later, the probate court issued its written commitment order dated December 17, 2013. The written order largely paralleled its previous findings from December 12, 2013, but added the following language: "[S]ubsequent to the issuance of [the May 1, 2013] Order, Susan E. Van Note, with full and complete knowledge of said Order and *possessing the ability to comply with same*, willfully failed and refused to comply with its terms by failing to return the assets of this estate." (Emphasis added.)

Van Note appeals the civil commitment order. Further facts will be set forth in the opinion as necessary to our analysis.

## Standard of Review

"This court has the authority to review the trial [or probate] court's order holding a person in civil contempt." *Rutter v. Bugg (Estate of Downs)*, 300 S.W.3d 242, 246 (Mo. App. W.D. 2009). "We will affirm the [probate] court's judgment unless there is no substantial

4

evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law." *Id.*

> As the trier of fact, it is the trial court's function and duty to assess the weight and value of the testimony of each witness. . . . [W]e must give due regard to the trial court's opportunity to judge the credibility of the witnesses. We view the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences.

*O'Dell v. Mefford*, 211 S.W.3d 136, 141 (Mo. App. W.D. 2007) (numerous internal citations omitted) (internal quotation marks omitted).

## Analysis

Van Note raises three points on appeal. Her first two points are interrelated, arguing: (1) that there was no substantial evidence to support the probate court's underlying contempt order, claiming that the probate court did not have substantial evidence of Van Note's present ability to pay the amount ordered; and (2) the probate court did not make an express finding that Van Note possessed the present ability to return the estate's assets. Though Van Note confuses this case by citing to irrelevant child support contempt case precedent,[7] Van Note's underlying contentions are simply refuted by the record in this case.

At the contempt hearing, the probate court heard evidence that Van Note removed $620,000 in cash from the estate and real and personal property, some of which Van Note subsequently sold. Although Van Note had returned some of this property to the estate, she admittedly had not returned all of it.

---

[7] Van Note cites *Lyons v. Sloop*, 40 S.W.3d 1, 11-12 (Mo. App. W.D. 2001), a child support contempt proceeding in which this court cited to *State ex rel. Nesser v. Pennoyer*, 887 S.W.2d 394 (Mo. banc 1994), in which the Missouri Supreme Court analyzed the distinction of child support contempt cases from general money debt contempt proceedings. Here, the proceedings do not relate to a debt owed a creditor, or a continuing or delinquent child support obligation; instead, the monetary obligation is that of returning assets that were improperly removed from the estate. Van Note's citation to child support enforcement contempt case precedent is, thus, inapposite.

5

Van Note testified that, after removing assets from the estate that belonged to the estate, she posted a $1 million cash bond in her criminal case and "spent" money for legal fees[8] she had "incurred" (in the criminal case), by virtue of the "lien" she placed upon the $1 million cash bond. Subsequently, then, when the $1 million bond was released and replaced with a $250,000 bond, Van Note apparently believed that the probate court's order directing her to return the estate's assets was inferior to her "lien" upon the balance of the cash bond, $750,000, that had been returned to her. Van Note did not bring statements from her various legal counsel to prove *actual* expenses to the probate court; instead, she merely claimed to the probate court that the $750,000 she received from the release of the bond was subject to her personal "lien" upon the estate's cash assets and had thus been "spent" on her criminal defense. The probate court clearly did not find Van Note's "lien" testimony persuasive or credible and, instead, on December 17, 2013, concluded that Van Note, "possessing[9] the ability to comply with [the probate court's May 1 order], willfully failed and refused to comply with its terms by failing to return the assets of this estate."

> Once the court is convinced that a person, over whose person the court has obtained jurisdiction, is withholding from an administrator property belonging to the estate, the administrator is entitled to an order that property be turned over, and the order, if disobeyed, may be enforced by contempt proceedings.

*Estate of Downs*, 300 S.W.3d at 247-48 (internal quotation and citation omitted).

Substantial evidence exists in the record to support the probate court's contempt and enforcement orders and the challenged order expresses the probate court's belief and finding that Van Note possesses the present ability to return the assets of the estate in her possession.

---

[8] Courts are considered experts on the amount of attorney's fees. *Fleming v. Fleming*, No. WD76403, 2014 WL 2574608, at *4 (Mo. App. W.D. June 10, 2014).

[9] We note that it is no coincidence that the probate court's December 17, 2013 order uses the present tense of the word "possess," thus implying that Van Note possessed the *present* ability to purge herself from contempt but simply refused to do so.

6

Points I and II are denied.

Van Note's final point on appeal is that the commitment order was entered without jurisdiction in that it was entered under the sub-case number 11CY-PR00051-03 whereas the contempt ruling was issued under the sub-case number 11CY-PR00051-02. Van Note supplies the court with no legal authority supporting her position. "[A]n appellant must cite legal authority to support his points relied on if the point is one in which precedent is appropriate or available; if no authority is available, an explanation should be made for the absence of citations." *Fritz v. Fritz (In re Marriage of Fritz)*, 243 S.W.3d 484, 488 (Mo. App. E.D. 2007). Absent citation to legal authority for her position in this point on appeal, Van Note has preserved nothing for review on this point.

*Ex gratia*, we note that both proceedings are part of the general probate of the estate, which is case number 11CY-PR00051. The probate court clearly possessed subject matter jurisdiction over the probate proceedings encompassed by this case number. All parties were represented at the contempt hearing and the December 2013 hearing from which the order of commitment was subsequently issued. All parties were given an opportunity to argue, present evidence, or otherwise make their positions known at both hearings. The commitment order expressly referenced the prior contempt ruling entered by the probate court in the companion "sub-case." Van Note alleges no prejudice from having the commitment order entered under a different "sub-case" number, particularly where both "sub-case" number references are within the umbrella of the originally assigned probate estate case number.

Point III is denied.

**Conclusion**

We affirm the probate court's commitment order for civil contempt.

_____
Mark D. Pfeiffer, Presiding Judge

James Edward Welsh and Karen King Mitchell, Judges, concur.

8