

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| In the Matter of: | ) | |
| THE EBERLE FAMILY TRUST TWO (2). | ) | |
| | ) | |
| ROGER EBERLE, | ) | |
| | ) | |
| Appellant, | ) | No. SD33640 |
| | ) | Filed: January 26, 2016 |
| vs. | ) | |
| | ) | |
| SUSAN EBERLE, TRUSTEE | ) | |
| OF THE EBERLE FAMILY TRUST, | ) | |
| | ) | |
| Respondent.[1] | ) | |

### APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Charles D. Curless, Special Judge

**<u>AFFIRMED</u>**

This is an appeal by Roger Eberle of an "Order Approving Trust Accounting and Proposed Distribution" ("Order")[2] entered on October 8, 2014. In his five points on appeal,

---

[1] The Order appealed from denotes the wrong case caption; i.e., "In the Estate of: MAX N. EBERLE Deceased." However, the Order does reflect the correct case number. We use the correct case caption here.

[2] Although this Order was not denominated as a "judgment," Rule 74 does not apply to this Order of the probate division. Rule 41.01(b); ***State ex rel. Baldwin v. Dandurand***, 785 S.W.2d 547, 550 (Mo. banc 1990). As section 472.160.1(14) indicates, "[a]ny interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any case[] . . . where there is a final order or judgment of the probate division . . . under this code[.]" "This statutory right to appeal must be liberally construed to favor the right to appeal." ***Estate of Sullivan v. Sullivan***, 366 S.W.3d 639, 642 n.3 (Mo.App. E.D. 2012). A probate order that "disposes of all claims and issues in the proceedings before it" is appealable pursuant to section 472.160. ***Id.*** As the Order at issue in this matter disposed of all claims and issues in the proceedings before it, the Order was appealable and is properly before this Court. (All rule references are to Missouri Court Rules (2014), and all references to statutes are to RSMo 2000, unless otherwise indicated).

Roger Eberle asserts the trial court erred in overruling beneficiary objections[3] to the "Petition for Approval of Trust Accounting and Proposed Distribution," filed by Susan Eberle in her capacity as Trustee of The Eberle Family Trust Two (2). Finding no error, we affirm the trial court's Order.

## Facts and Procedural History

We recite the facts of this case in the light most favorable to the trial court's order. *In re Estate of Arbeitman*, 886 S.W.2d 644, 645 (Mo.App. E.D. 1994). It is the trial court's function and duty to assess the credibility of witnesses, and we will not disturb the trial court's credibility determinations on appeal. *In re Estate of Van Note*, 443 S.W.3d 32, 35-36 (Mo.App. W.D. 2014).

At the time of his death, Max N. Eberle ("Max") was the father of six children: James Eberle ("James"), Stephen Eberle ("Stephen"), Robert Eberle ("Robert"), Diane Stoops ("Diane"), Roger Eberle ("Roger"), and Susan Eberle ("Susan").[4]

On April 26, 2007, Max executed a Revocable Living Trust Agreement distributing his assets equally to his children upon his death. This trust was funded by the majority of Max's assets, and appointed Susan, Roger, and Stephen, as joint trustees. At the same time, Max executed a Last Will and Testament and a General Durable Power of Attorney.

Max's wife left him in January 2008 because Max had Parkinson's disease. Susan and Diane thereafter agreed to assist Max with everyday tasks. Susan testified that Max wanted to compensate her and Diane for their assistance, but he could not afford to pay them at the time of

---

[3] Roger Eberle and Stephen Eberle are the only two beneficiaries who filed objections to the Petition for Approval of Trust Accounting and Proposed Distribution. Only Roger appealed the trial court's Order.

[4] Because a portion of the involved parties share the same surname, for ease of reference, we refer to the parties individually by their first names. We mean no familiarity or disrespect.

2

their services as he had no liquid assets; he indicated any compensation "would have to be done at the end." Susan and Diane provided daily in-home care for Max until he was hospitalized following a fall in January 2011.

Following Max's hospitalization, Max could no longer live alone and required 24-hour care. Susan and Diane began 24-hour, in-home care for Max in February 2011. Diane's husband, Richard, who was unemployed at the time, cared for Max twelve hours a day during the week, and Susan, Diane, and Robert cared for Max the other twelve hours and weekends. All four kept daily calendars of time spent caring for Max and any expenses they incurred. Susan's boyfriend, Jeff, also helped with maintaining Max's real estate and rental properties.

On April 27, 2011, "Letters of Guardianship of an Incapacitated Person" were issued to Susan and Diane due to Max's physical inability to care for himself. Max was placed in a nursing home shortly thereafter.

On June 22, 2011, an irrevocable trust—"The Eberle Family Trust"—was created using Max's Power of Attorney in order to secure veterans' and other benefits for Max. Max's children sought legal counsel, were all present when the trust was signed, and unanimously agreed that Susan would act as the sole Trustee. The irrevocable trust was funded and a bank application was made to secure a line of credit against Max's home to provide for his care.

On August 31, 2011, after it was discovered that the bank would not extend credit without Max's signature on the trust, "The Eberle Family Trust Two (2)" was created. After securing Max's signature on the trust documents, the majority of Max's assets were transferred from the Revocable Living Trust Agreement dated April 26, 2007 and from the June 22, 2011 irrevocable trust ("The Eberle Family Trust"), into "The Eberle Family Trust Two (2)" ("The Trust").

3

Susan was the sole lifetime beneficiary of the Trust, and the Trustee. As Trustee, she had "broad discretion with respect to the management, distribution and investment of assets in [Max's] trust." Max directed Susan to exercise her trust powers "in the manner my Trustee determines to be in the best interests of the beneficiaries." Among other powers, Susan had the authority to "enter into contracts" that she "deem[ed] appropriate," and make distributions to or for the benefit of one or more trust beneficiaries to the exclusion of other beneficiaries. The Trust also provided that the Trustee "may reasonably compensate an individual or entity employed to assist or advise the Trustee," "may pay the usual compensation for services contracted for . . . out of principal or income of the trust as the Trustee may deem advisable," and "may pay compensation to an individual . . . employed to assist . . . the Trustee without diminution of or charging the same against the compensation to which the Trustee is entitled under this agreement." Max also directed that the "terms of this trust agreement prevail over any provision of Missouri law, except those provisions that are mandatory and may not be waived."

The Trust also provided that it "be administered expeditiously, consistent with the provisions of this agreement, free of judicial intervention, and without order, approval or action of any court." The Trust would be "subject to the jurisdiction of a court" only if the Trustee or another interested party "institutes a legal proceeding[,]" and a proceeding seeking instructions or a court determination "shall not subject [the] [T]rust to the continuing jurisdiction of the court." Finally, Max directed that "[a]n individual serving as Trustee shall be entitled to fair and reasonable compensation for the services rendered as a fiduciary[,]" the Trustee "may charge additional fees for services it provides that are not comprised within its duties as Trustee," and the Trustee "may be reimbursed for reasonable costs and expenses incurred in carrying out its duties under this agreement."

4

Max died on May 20, 2012. Thereafter, two separate proceedings were filed in probate court—one case regarding Max's will, and one case regarding the administration of the Trust.

On September 10, 2012, Susan filed Max's Last Will and Testament with the Probate Division of the Circuit Court of Newton County and petitioned for an "Application for Letters Testamentary," to which case number 12NW-PR0023 was assigned. Roger and Stephen filed a "Renunciation of Executor" renouncing their right to administer the estate and requesting testamentary letters be issued to Susan. Letters Testamentary were issued to Susan on September 28, 2012. Susan filed an amended inventory and appraisement consisting of household goods and furniture with a value of $100, and one tract of real estate with a value of $1.00. The tract of real estate was to be transferred to the Neosho Special Road District in exchange for repairs to the road known as "North Shade Lane," where Max's home and certain other real estate he owned was located. After Susan's petition to transfer the tract of real estate and the court's order approving the transfer, the docket sheet reflects no other activity in the case bearing number 12NW-PR0023.

Susan liquidated Max's assets by authority of the provisions of the Trust. She secured the help of Roger, Robert, her boyfriend Jeff, and a family friend to assist in cleaning up the real estate properties so they could be sold, and paid these individuals for their services. Susan testified that Roger was paid the most and never questioned her authority as Trustee to pay him from the Trust.

On November 20, 2013, Susan filed a "Petition Requesting Instructions and Praying for Declaration of Rights under RSMO 456-022.202 [sic]," in the Probate Division of the Circuit Court of Newton County, assigned case number 13NW-PR00240. In the petition, Susan requested an order of the court allowing her to sign, on behalf of the Trust, all paperwork

5

necessary to complete the transfer or sale of several tracts of trust real estate, an order indicating whether a ledger kept by Max documenting transfers of land and monies to the children should be used in the distribution of trust funds to the children, and an order approving reimbursement to Susan for out-of-pocket expenses, a trustee's fee, and payment of attorney fees.

Roger filed an answer to the petition on December 18, 2013, admitting all the allegations contained in the petition, asking the court to declare the rights and ownership of the Trust property and beneficiaries, and requesting that Susan receive reasonable compensation for her services. Stephen also filed an answer. Roger then requested a change of judge. There is no indication in the record that the court ruled on the issues raised in these pleadings. However, on June 18, 2014, Roger filed a "Motion to Distribute Trust Assets to Beneficiaries" in case number 13NW-PR00240, asking the court to order Susan to distribute all the Trust assets, for an itemized accounting, and for an itemization of trustee and attorney fees.

Before a hearing could be held on Roger's motion, Susan filed her "Trust Accounting and Proposed Distribution" on July 8, 2014. Both Roger and Stephen filed objections to the accounting asserting that the accounting contained improper trust expenses; specifically, payments made to or on behalf of Robert, Susan, Diane, Richard, and Jeff. They asserted that there was "no accounting" for these payments. Roger also asserted that Susan had paid herself $18,000 in trustee's fees without authority under the Trust, and that she had breached her fiduciary duties. Roger asked that Susan be removed as Trustee or, in the alternative, be restricted in her payment of expenses and distribution. Thereafter, both Roger and Stephen filed additional objections, wherein Stephen asserted that the "statute of limitations" had run on the "claims" of Susan, Diane, and Richard.

6

A hearing was held on October 8, 2014, at which Roger, Susan, Diane, Richard, and Jeff testified. Stephen was not present, but was represented by counsel. Stephen's counsel requested the trial court take judicial notice of the "probate proceeding" pending under case number 12NW-PR0023, when questioning the witnesses regarding payments received in caring for Max and his properties. Various exhibits were entered into evidence, including personal calendars, personal notebooks, and other personal records documenting the care and services provided to Max.

At the close of the evidence and after a short recess, the trial court announced its findings. The trial court found Susan's witnesses credible, that Susan did have the authority under the provisions of the Trust to make the payments she did, and that those payments were necessary for the administration of the Trust. The trial court specifically noted that of those payments, Roger himself was paid a total of "$26,000 plus" for what "seemed like fairly limited work." The trial court then entered its "Order Approving Trust Accounting and Proposed Distribution." This appeal followed.

In five points on appeal, Roger asserts the trial court erred in applying the law in overruling beneficiary objections to Trustee's accounting because: (1) "claims" paid by the Trustee to herself and others were barred by the "statute of limitations" and Trustee lacked authority; (2) Trustee did not overcome the presumption that the services rendered by family members to Max were gratuitous; (3) the trial court abused its discretion in that the Order was not supported by substantial evidence that Trustee had authority to pay herself a fee in the

amount of $18,000; (4) Trustee lacked authority under the Trust to make the distributions at issue; and (5) the trial court did not approve Roger's request for attorney's fees.[5]

## Standard of Review

A court-tried probate case is reviewed under the familiar standard of ***Murphy v. Carron***, 536 S.W.2d 30 (Mo. banc 1976), and we will affirm unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. ***Schieber v. Schieber***, 298 S.W.3d 130, 132-33 (Mo.App. W.D. 2009).

It is the trial court's function and duty to make credibility determinations, and we must defer to those findings on appeal. ***In re Estate of Van Note***, 443 S.W.3d at 35-36.

## Analysis

### *Point I*

In Point I, Roger argues the trial court erred in applying the law in that: (1) the "claims" paid by Trustee were barred by the "statute of limitation," and (2) that Trustee lacked authority to make these distributions.

Roger suggests that the recipients of Trustee's disbursements were effectively "claimants" and that because such recipients did not file claims in Max's probate estate, recipient's claims are time barred by section 473.444. The argument in Point I fails to demonstrate how section 473.444, which deals with the time for making claims against a decedent's *estate*, applies to distributions made by Trustee from the *Trust*. An appellant's argument must show how principles of law and the facts of the case interact. ***Mael v. McEvoy***, 451 S.W.3d 264, 266-67 (Mo.App. W.D. 2014). We will not assume the role of advocate and

---

[5] We note there are numerous Rule 84.04 deficiencies in Roger's brief, including 84.04(c) and 84.04(d) violations. However, we are able to discern the nature of his complaints and grant review *ex gratia*. ***Atkins v. McPhetridge***, 213 S.W.3d 116, 120 (Mo.App. S.D. 2006). We emphasize the necessity for counsel to abide by Rule 84.04.

perform research on behalf of appellant, or speculate on arguments appellant could have made but did not. *Falls Condominiums Owners' Ass'n, Inc. v. Sandfort*, 263 S.W.3d 675, 679 (Mo.App. S.D. 2008).

Point I also argues that the Trust did not grant Trustee the authority to make these disbursements, and that Trustee lacked authority under the Uniform Trust Act. The only support Roger cites in support of this argument is section 456.5-505.1, which states:

> Whether or not the terms of a trust contain a spendthrift provision, during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.

We are unable to determine, and Roger does not sufficiently explain, how this provision applies to the facts in this case.

The terms of the trust govern the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary unless the trust provides otherwise, or an exception applies. § 456.1-105.

Here, the Trust gave Trustee broad discretion with respect to the management and distribution of the assets of the Trust, explicitly authorizing the Trustee to make distributions "in the manner my Trustee determines to be in the best interests of the beneficiaries." The Trust further authorized Trustee to enter into contracts she deemed appropriate, and to reasonably compensate individuals the Trustee utilized to assist Trustee. The Trust indicated that the terms of the Trust prevailed over any provision of Missouri law, except provisions that were mandatory and could not be waived.

Additionally, the Trust was to be administered free of judicial intervention and without the necessity of approval or action of any court. The Trust was to be subject to the jurisdiction of the court only if the Trustee or another interested party instituted a legal proceeding; however, a

9

proceeding seeking instructions or a court determination would "not subject [the] [T]rust to the continuing jurisdiction of the court."

Max named Susan as the sole "lifetime beneficiary." During Max's lifetime, distributions from the Trust were to be made solely to Susan or for her benefit. As Trustee, Susan had the authority to enter into contracts she deemed appropriate, and could exercise her powers in the manner she determined to be in the best interests of the beneficiary—herself.

The trial court could find that Susan thought it was in her best interests to enter into contracts for her father's care. Diane testified that she and Susan had often discussed payment for work by Diane, Richard, and Susan's boyfriend Jeff. The trial court could have found, and apparently did find, that Susan extended the Trust's promise to pay these contracts while she was the sole beneficiary. Likewise, the trial court did not err as a matter of law in finding that Susan was acting within her authority as Trustee when she entered into these contracts, and thereafter paid them. Point I is denied.

### *Point II*

Point II essentially argues that the trial court erred as a matter of law in failing to find that Trustee did not overcome the presumption that services rendered by "claimants" were gratuitous. However, the cases and authorities to which Roger directs this Court all deal with claims made by persons in probate estates. Roger does not explain or cite authority indicating how the principles espoused in any of these cases relate to trust distributions made by a trustee. This argument is wholly unpersuasive. As we have indicated, we will not assume the role of advocate and perform research on behalf of appellant, or speculate on arguments appellant could have made but did not. *Falls Condominiums*, 263 S.W.3d at 679. Point II is denied.

10

## *Point III*

Point III argues that the trial court's Order was not supported by substantial evidence, represented an abuse of discretion, and that the trial court misapplied the law in that Trustee lacked authority to pay herself a trustee's fee.

Roger does not follow the mandatory framework set forth by **Houston v. Crider**, 317 S.W.3d 178, 187 (Mo.App. S.D. 2010),[6] for his not-supported-by-substantial-evidence challenge, rendering this argument analytically useless. *See **In re Adoption of C.M.***, 414 S.W.3d 622, 651 (Mo.App. S.D. 2013).

With respect to his misapplication-of-the-law challenge, we do not find the cases Roger cites to be persuasive. ***Ferrell v. Mercantile Trust Co., N.A.***, 490 S.W.2d 397 (Mo.App. ST.L.D. 1973) and ***Morrison v. Asher***, 361 S.W.2d 844 (Mo.App. Spfld.D. 1962), both dealt with cases where the trusts at issue did not provide for compensation to the trustee. By contrast, the Trust in this matter expressly provided that "[a]n individual serving as Trustee shall be entitled to fair and reasonable compensation for the services rendered as fiduciary." The Trustee could "charge additional fees for services [she] provides that are not comprised within [her] duties as Trustee[,]" and "may be reimbursed for reasonable costs and expenses incurred in carrying out [her] duties under this agreement." Further, the Trust explicitly stated that judicial approval was not needed for Trustee to make disbursements.

---

[6] For a not-supported-by-substantial-evidence challenge, an appellant must, in sequence:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Houston*, 317 S.W.3d at 187.

Roger's abuse-of-discretion challenge is not discussed in his argument and is, therefore, abandoned. ***Mortgage Electronic Registration Systems, Inc. v. Williams-Pelton***, 196 S.W.3d 50, 52 (Mo.App. W.D. 2005). Point III is denied.

### *Point IV*

The substance of Point IV is that the trial court erred in applying the law because there was evidence that Trustee paid herself and claimants without authority under the Trust. Because this point is redundant of arguments made in Roger's Points I, II, and III, we deny Point IV for the reasons discussed in our resolution of those points.

### *Point V*

In Point V, Roger argues that the trial court erred as a matter of law in rejecting his claim for attorney's fees in that his claim served to benefit the corpus of the Trust.

Roger impliedly concedes that to be successful in this claim, this Court would need to reverse the Order of the trial court. Because we decline to grant any of Roger's first four points, we must deny Point V.

The Order of the trial court is affirmed.[7]

WILLIAM W. FRANCIS, JR., J. - AUTHOR

DON E. BURRELL, JR., P.J. – CONCURS

GARY W. LYNCH, J. – CONCURS

---

[7] On the morning of oral argument, Susan filed a "Motion for Award of Attorney Fees." The motion cites four cases as authority for this Court to award attorney fees to a trustee in actions involving a trust. "While we have the authority to award attorney fees on appeal, we exercise this power with caution." ***Developers Surety and Indemnity Company v. Woods***, 455 S.W.3d 487, 494 (Mo.App. W.D. 2015). The cases cited by Susan addressed the issue of attorney fees at the trial court and on appeal, unlike this case. Susan's motion is overruled.